IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADOLPH MUIR, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>AM SOLUTIONS, LLC, et al.,<br><br>        Defendants. | CIVIL ACTION<br>NO. 18-729 |

**OPINION**

**Slomsky, J.**                                                                                                                                                                                                        April 17, 2019

**I. INTRODUCTION**

This case arises from a mortgage foreclosure action filed in the Court of Common Pleas of Philadelphia County by Defendant AM Solutions, LLC ("AM Solutions") against Plaintiffs Adolph and Doris Muir ("Plaintiffs"), an elderly married couple living in North Philadelphia. In the foreclosure action, AM Solutions alleged that Plaintiffs had defaulted on their home mortgage executed in 1983 for $6,500. The home is located at 2141 North Woodstock Street, Philadelphia, Pennsylvania. Including interest and fees, AM Solutions claimed that the amount owed rose dramatically over the years and that Plaintiffs now owe $83,635.77 on the mortgage. For their part, Plaintiffs submit that they have no memory of executing the mortgage, receiving money from the mortgage loan, or making payments on it. (Doc. No. 13.)

In the present action, Plaintiffs allege that AM Solutions and its attorneys, Defendant DWaldmanLaw, P.C. ("DWaldmanLaw") and Defendant Law Offices of Damian G. Waldman, P.A. ("LODGW"), used false, misleading, and deceptive practices to collect the mortgage debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 P.S. §§ 101-605. Plaintiffs also seek

1

to quiet title on their home. (Id.) DWaldmanLaw is a Pennsylvania professional corporation with a business address in Mechanicsburg, Pennsylvania. LODGW is a Florida corporation with headquarters in Seminole, Florida. (Id. at 2-4.)

On August 1, 2018, Defendants filed a Motion to Dismiss the Amended Complaint, arguing that (1) the Court should dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (2) the Court should dismiss all claims against LODGW for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 20.) On August 13, 2018, Plaintiffs filed an Amended Response and Cross-Motion to Stay, which asked the Court to stay the case pending jurisdictional discovery, but did not address Defendants' non-jurisdictional arguments. (Doc. No. 22.) Defendants filed a Response in Opposition to the Cross-Motion to Stay. (Doc. No. 24.) After a hearing, which was held on November 19, 2018, the Court granted Plaintiffs' Cross-Motion to Stay and ordered the parties to conduct jurisdictional discovery on the issue of whether the Court has personal jurisdiction over LODGW. (Doc. No. 31.) On March 8, 2019, in accordance with the direction of the Court, the parties filed supplemental memoranda on that issue. (Doc. Nos. 40, 41.)

At this stage in the proceedings, the sole issue before the Court is whether it has personal jurisdiction over Defendant LODGW in this matter. Having reviewed the parties' supplemental memoranda, the Court is persuaded that it is proper to exercise personal jurisdiction over LODGW. Consequently, the Motion to Dismiss will be denied, insofar as it relates to the issue of personal jurisdiction. The Court will not address the remainder of the Motion until the parties have had the opportunity to further brief Defendants' non-jurisdictional arguments.

## II. BACKGROUND

### A. Factual History

Plaintiffs Adolph and Doris Muir have lived at 2141 North Woodstock Street, Philadelphia, Pennsylvania for nearly forty-one years. They bought the home on July 5, 1978 for $4,500, and have lived there ever since. To the best of their recollection, they did not execute a mortgage to finance the purchase of the property. (Doc. No. 13 at 5-6.) But on February 23, 2017, Plaintiffs received a Notice of Intention to Foreclose (the "Intent Notice") on the property from Defendant DWaldmanLaw on behalf of its client, Defendant AM Solutions. The Intent Notice stated the following:

> Dear Adolph Muir and Doris Muir:
>
> Dwaldmanlaw, P.C. represents AM Solutions, LLC ("Lender"), the holder of a Mortgage on your property located at: 2141 N. Woodstock St., Philadelphia, PA 19121, which Mortgage is in **SERIOUS DEFAULT** because your Loan has reached its maturity date of February 14, 1986. Your lender's records indicate you have not made the minimum monthly payments since September 14, 1998. Your account is past due as follows:
>
> | Unpaid installments: | $61,506.51 |
> |---|---|
> | Unpaid Fees: | $3,967.14 |
> | TOTAL DUE: | $65,473.65 |
>
> ***
>
> If you do not cure this default within **THIRTY (30) DAYS**, you will become liable for reasonable attorney's fee not to exceed $175.00 plus costs. Our client intends to exercise its right to accelerate the mortgage payments at that time. This means whatever is owing on the original amount borrowed will be considered due immediately and you may lose the chance to pay off the original Mortgage in monthly installments. If full payment of the amount of default is not made within **THIRTY (30) DAYS**, Lender also intends [to] start a lawsuit to foreclose on your mortgaged property.

(Doc. No. 40 at 25.) Attached to the Intent Notice was an Act 91 Notice, which, in accordance with Pennsylvania law, informed Plaintiffs that the mortgage on their home was in default and

advised them that they might be eligible to receive financial assistance from the Commonwealth.[1] Although DWaldmanLaw is a Pennsylvania corporation, the Notices were sent from a P.O. Box in Largo, Florida. (Doc. No. 40-1 at 20.)

Plaintiffs were "surprised and confused" by the Notices because they had no memory of executing a mortgage on their home. (Doc. No. 13 at 6.) As a result, they did not send the requested payment to AM Solutions. On April 19, 2017, having received no payments, AM Solutions, through DWaldmanLaw, filed a mortgage foreclosure action against Plaintiffs in the Court of Common Pleas for Philadelphia County.[2] See AM Solutions, LLC v. Muir, Civ. No. 02534 (Ct. Com. Pl. Philadelphia, filed Apr. 19, 2017). Although the state court complaint was filed by an attorney with DWaldmanLaw, a Pennsylvania corporation, the address listed for the attorney on the complaint's civil cover sheet was 10333 Seminole Boulevard, Units 1 and 2, Seminole, Florida. (Doc. No. 40-5 at 2.)

In the state court complaint, AM Solutions asserted that on February 14, 1983, Plaintiffs executed a mortgage on their home in favor of Harry Friedman, which was then recorded in the Office of the Recorder of Deeds of Philadelphia County on February 18, 1983. (Doc. No. 40-1 at 5-6.) The mortgage documents, which are attached to the Amended Complaint in the present action, state that Harry Friedman agreed to loan Plaintiffs $6,500, payable with 15% annual interest

---

[1] The Homeowners' Emergency Mortgage Assistance Program ("HEMAP") was created by Act 91 of 1983 and is a Pennsylvania law designed to protect Pennsylvanians who are financially unable to make mortgage payments and are in danger of losing their homes to foreclosure. Act 91 mandates that any lender who intends to foreclose on a mortgage must send an Act 91 Notice to the mortgagor to inform him of the lender's intent to foreclose and to advise him that he may qualify for financial assistance under HEMAP. 35 P.S. § 1680.403c.

[2] On May 18, 2018, the mortgage foreclosure action was dismissed without prejudice for failure to comply with the local pleading requirements. (Doc. No. 40 at 2 n.1); see AM Solutions, LLC v. Muir, Civ. No. 02534 (Ct. Com. Pl. Philadelphia, filed Apr. 19, 2017).

over three years through monthly payments of no less than $225.33 beginning March 1, 1983. (Doc. No. 13 at 35-38.) The maximum amount secured by the mortgage was the penal sum of $13,000. (Id.) The mortgage documents appear to be signed by Plaintiffs and witnessed by their cousin, Bernard Muir. (Id.) On July 25, 2016, AM Solutions became the holder of the mortgage through an assignment, which was recorded on August 15, 2016. (Id. at 20.)

In the state foreclosure action, AM Solutions alleged that Plaintiffs owed $83,635.77, and provided a chart to demonstrate how it arrived at that sum:

| Unpaid Principle Balance | $13,000 |
| --- | --- |
| Accrued Interest from 2/14/1983 to 4/30/17 (the per diem interest accruing on this debt is $5.34 and that sum should be added each day after 4/30/17) | $66,668.63 |
| Fees at Charge-Off | $3,967.14 |
| TOTAL | $83,635.77 |

(Id. at 21.) For their part, Plaintiffs claim that they "have no recollection of signing the Mortgage, nor do they remember receiving money or making any payments with respect to a $6,500 loan." (Id. at 7.)

**B. Plaintiffs File an FDCPA Claim in Federal Court**

On February 20, 2018, Plaintiffs initiated the present action by filing a three-count Complaint against AM Solutions, a Pennsylvania limited liability company, and DWaldmanLaw, a Pennsylvania professional corporation with a business address in Mechanicsburg, Pennsylvania. (Doc. No. 1.) In the Complaint, Plaintiffs alleged that the Intent Notice, the Act 91 Notice, and the mortgage foreclosure suit violated the Fair Debt Collection Practices Act ("FDCPA"). Plaintiffs also sought to quiet title on their home. (Id.)

On June 18, 2018, Plaintiffs filed the Amended Complaint, which added the Law Offices of Damian G. Waldman ("LODGW") as a Defendant. LODGW is a Florida corporation with

5

offices at 10333 Seminole Boulevard, Units 1 and 2, Seminole, Florida—the address listed on the civil cover sheet of the state foreclosure complaint. (Doc. No. 13.) According to the Amended Complaint, DWaldmanLaw and LODGW work in concert to collect consumer debts by filing foreclosure actions in Pennsylvania. (Id.) Also added to the Amended Complaint was a fourth count, alleging that AM Solutions violated the Pennsylvania Loan Interest and Protection Law ("Act 6"). (Id.)

On August 1, 2018, Defendants filed a Motion to Dismiss the Amended Complaint, contending that (1) all counts should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (2) all claims against LODGW should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 20.) Plaintiffs then filed an Amended Response and Cross-Motion to Stay, in which they asked the Court to stay the case pending jurisdictional discovery on the issue of whether the Court has personal jurisdiction over LODGW. (Doc. No. 22.) The Amended Response and Cross-Motion to Stay did not address Defendants' Rule 12(b)(6) arguments. After a hearing, which was held on November 19, 2018, the Court granted Plaintiffs' Cross-Motion to Stay and ordered the parties to conduct jurisdictional discovery.[3] (Doc. No. 31.)

**C. Facts Learned During Jurisdictional Discovery**

On March 8, 2019, after completing jurisdictional discovery, the parties filed supplemental memoranda on the issue of whether the Court has personal jurisdiction over LODGW. (Doc. Nos.

---

[3] With respect to jurisdictional discovery, the United States Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Rocke v. Pebble Beach Co., 541 Fed. App'x 208, 212 (3d Cir. 2013) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978)). Unless a plaintiff's claim is "clearly frivolous, jurisdictional discovery should be allowed. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)).

40, 41.) Attached to Plaintiffs' supplemental memorandum is a copy of LODGW's public LinkedIn page.[4] The "About Us" section of the page provides the following information:

> The Law Offices of Damian G. Waldman, P.A. was established by Damian Waldman, Esquire, in 2011 to cater to creditors and lenders with personal attention and precision to detail. The law firm started out as a solo practice dedicated to working with small lenders/private investors focusing on foreclosures, collections, deficiency judgments, default of promissory note actions, evictions, bankruptcy defense/creditor's protection, business contracts, closings, business formations, trust formations, and other small transactions.
>
> ***
>
> To meet the needs of the Firm's existing clients, the Law Firm has expanded its practice to New Jersey, New York, Nevada, Texas, Pennsylvania, Tennessee, Nebraska, Wisconsin, Colorado, and Arkansas, partnering with other attorneys where necessary.

(Doc. No. 40-7 at 2.) In the "Company Details" section of the LinkedIn page, LODGW directs viewers to the following website: http://www.dwaldmanlaw.com. The page also states that LODGW has eight "affiliated" offices across the county, one of which is located at 4900 Carlisle Pike, Mechanicsburg, Pennsylvania—the address for DWaldmanLaw. (Id.)

Also attached to Plaintiffs' supplemental memorandum is a copy the dwaldmanlaw.com homepage, which is entitled "Law Offices of Damian G. Waldman." The homepage states the following:

> The Law Offices of Damian G. Waldman, P.A. is an expanding creditors' rights law firm based in Seminole, Florida. We provide foreclosure and bankruptcy services to lenders in seven states: Florida, New Jersey, New York, Texas, Nevada, Tennessee, and Pennsylvania.

(Doc. No. 40-8.) The website also contains several job postings. It is unclear whether these postings are for jobs at LODGW, DWaldmanLaw, or both. One such posting states that

---

[4] LinkedIn is a social media networking site that allows users to create professional profiles and network with other users. LinkedIn is primarily used for professional networking and serves to connect recruiters and job seekers.

DWaldmanLaw seeks "a motivated, experienced creditors' rights attorney to join our Pennsylvania and New Jersey firms." (Id. at 3.) The job posting also gives a description for DWaldmanLaw: "DWaldmanLaw is an expanding creditors' rights law firm with a huge reach. We provide foreclosure and bankruptcy services through our network of affiliated firms to lenders in seven states: Florida, New Jersey, New York, Texas, Nevada, Tennessee, and Pennsylvania." (Id.) This description is nearly identical to the description of LODGW. The job posting also states that DWaldmanLaw is located in Seminole, Florida—the location of LODGW. (Id. at 3-4.) Another job posting, which advertises a paralegal opening in the New Jersey office, states that the employer is both LODGW and DWaldmanLaw. The address listed is Seminole, Florida. (Doc. No. 40-10 at 2-4.)

During jurisdictional discovery, Plaintiffs deposed Martin L. Johnson, the Director of Operations of LODGW. (Doc. No. 40-3.) In the deposition, which took place on January 4, 2019, Mr. Johnson testified that LODGW is "affiliated" with several law firms across the country, including DWaldmanLaw, and that LODGW occasionally provides administrative support for these affiliated law firms, all of which were established by Damian G. Waldman, Esquire:

> Mr. Johnson: Well, oftentimes, as I'm sure you're aware, we have several different affiliations in the different states Mr. Waldman established.
>
> As part of those affiliations, our office in Florida, on occasion, will assist with the mail, as well as with phone work. And what do I mean by that? The Florida firm occasionally receives mail for the other states and sends that mail to the respective offices or to— directly to the attorneys.
>
> And the same thing with calls. Our receptionist, if they get a call for another firm, she forwards that to the attorney who handles that firm.

(Id. at 8.) For this reason, the return address listed on the Intent Notice is a P.O. Box in Largo, Florida. Mr. Johnson testified that LODGW and DWaldmanLaw share that P.O. Box:

Counsel: Okay. So this is the Certified Mail Receipt for the pre-foreclosure notice, I believe and foreclosure complaint. So do you see on the top left it has the – it says DWaldmanLaw, P.C., P.O. Box 5162, Largo, Florida, 33779. You see that?

Mr. Johnson: Yes, I do.

Counsel: Okay. Is that P.O. Box – does that belong to Waldman of Florida?[5]

Mr. Johnson: Well, that's a good question. I don't know.

Counsel: Okay. Who would know?

Mr. Johnson: Well, I imagine the person who opened the account, and that would be – I'm not really sure who would have opened up that P.O. Box. But I do know we receive Florida's information there too.

Counsel: Does Waldman of Florida use that P.O. Box?

Mr. Johnson: I know that we receive mail at that P.O. Box, yes.

Counsel: Do you know if Waldman of Pennsylvania receives mail at that P.O. Box?[6]

Mr. Johnson: Well, I'm looking at one right now, so I would say yes.

Counsel: So Waldman of PA and Waldman of Florida share the same post office box in Largo, Florida?

Mr. Johnson: I think you have probably several other firms that may share that same P.O. Box on occasion.

Counsel: So is that a yes to my question?

Mr. Johnson: I would say yes, most definitely.

Counsel: Okay.

---

[5] Throughout the depositions of Mr. Johnson and Mr. Waldman, the parties refer to LODGW as "Waldman of Florida."

[6] Throughout the depositions of Mr. Johnson and Mr. Waldman, the parties refer to DWaldmanLaw as "Waldman of Pennsylvania."

| | |
|---|---|
| Mr. Johnson: | As I stated earlier, we tried to assist any of the other firms that require, you know, basic assistance, whether it be on mail or receptionist; especially when it's, you know, a small firm. |
| Counsel: | So you would assist Waldman of Pennsylvania in sending out a pre-foreclosure notice or a foreclosure complaint? That's what you're saying basically? |

***

| | |
|---|---|
| Mr. Johnson: | Our mailroom sends out mailings for the various attorneys. We do provide mail-out assistance, as well as reception assistance. |
| Counsel: | And the mailroom employees are employees of Waldman of Florida, right? |
| Mr. Johnson: | Yes. |
| Counsel: | They're not employees of any other entity? |
| Mr. Johnson: | Correct. |

***

What we have is a direction from a PA attorney to put together a document and mail it out, and somehow, in some way there is a communication between that PA attorney, his staff, and our mailroom clerk who mailed it out for them.

(Id. at 11-14.) Mr. Johnson also elaborated on the nature of LODGW's "affiliation" with DWaldmanLaw, testifying that even though he is not an employee of DWaldmanLaw, he includes DWaldmanLaw information in his email signature.

| | |
|---|---|
| Counsel: | So you're saying you have Waldman of Pennsylvania on your signature line? |
| Mr. Johnson: | Yes, I do. |
| Counsel: | Even though you're not an employee of Waldman of Pennsylvania? |
| Mr. Johnson: | That's correct. It's an affiliation . . . we want all of our clients to be aware that we do have affiliations in other states and that if they |

10

> need legal resources or legal assistance for those states, that they have contact information for those firms.

(Id. at 18.)

On February 22, 2019, Plaintiffs deposed Damien G. Waldman, the president and managing attorney of LODGW.[7] (Doc. No. 40-12.) During the deposition, Mr. Waldman testified about the relationship between LODGW and DWaldmanLaw:

> Counsel: How do these entities, Waldman of Pennsylvania and Waldman of Florida, work together?
>
> Mr. Waldman: They have a limited involvement because they are small firms. Waldman of Florida will assist with mailing and provide reception.
>
> I mean, every state has their own local numbers, but we have a toll-free number that's really the Florida toll-free number.
>
> So it—the receptionist answers the phones for all the states and routes it to the different states and different attorneys and paralegals to handle.
>
> And on occasion, maybe one or two of my employees might help when somebody is out . . . .

(Id. at 12-13.) Along those lines, Mr. Waldman explained that a small number of LODGW employees help affiliated law firms like DWaldmanLaw with administrative duties like answering the phone or mailing foreclosure notices. (Id.) For example, Mr. Waldman stated that if DWaldmanLaw required administrative assistance with a case filed in a Pennsylvania court, an individual employed by LODGW might be tasked with contacting the Pennsylvania court on behalf of DWaldmanLaw for scheduling or other administrative purposes. (Id. at 14-15.) During his deposition, Mr. Waldman emphasized that the affiliated law firms are "segregated," and that LODGW employees only provide administrative services for the affiliated firms; LODGW

---

[7] Damien G. Waldman is not named as a Defendant in this case. Based on Mr. Johnson's deposition, it appears that Mr. Waldman established DWaldmanLaw, but it is unclear what role, if any, he currently plays at that firm.

employees do not draft legal documents for DWaldmanLaw. (Id.) But on at least one occasion, an LODGW employee performed legal research on Lexis in support of a motion filed in Pennsylvania by DWaldmanLaw. (Id. at 27-29.)

Apart from sharing certain administrative services, Mr. Waldman testified that it is possible that LODGW and DWaldmanLaw share accounts for Lexis and Westlaw, which are legal research subscription services. (Id. at 15-17.) Furthermore, Mr. Waldman stated that all of the affiliated firms—including LODGW and DWaldmanLaw—share email accounts:

> Counsel: Do you share email accounts?
>
> Mr. Waldman: We do share email accounts.
>
> Counsel: Tell me more about that.
>
> Mr. Waldman: It's just for simplicity and uniformity. We could have created a different legal – different websites and different legal emails, but, for simplicity, everybody just shares the same email account. It's segregated. It's the only one – well, I mean, it's segregated as an email account can be, so—
>
> \*\*\*
>
> Counsel: And email accounts for Waldman of Florida and Waldman of Pennsylvania typically end with DWaldmanLaw.com?
>
> Mr. Waldman: Yes.

(Id. at 17-19.)

From the Notices sent to Plaintiffs and the state court action filed against them, it is evident that LODGW plays a role in filing mortgage foreclosure lawsuits in Pennsylvania court with DWaldmanLaw. For example, although the Intent Notice and Act 91 Notice were sent on DWaldmanLaw letterheads, both documents display LODGW's telephone and fax numbers. (See

12

Doc. No. 40-1.) And while an attorney from DWaldmanLaw is listed as the attorney of record in the state court complaint, the civil cover sheet lists the attorney's address as 10333 Seminole Boulevard, Units 1 and 2, Seminole, Florida—the location of LODGW's headquarters and offices. (Doc. No. 40-5 at 2.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (internal citation omitted). To show personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). Where, as here, the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id.

## IV. ANALYSIS

At this stage in the proceedings, the sole issue before the Court is whether it has personal jurisdiction over Defendant LODGW. In Defendants' Motion to Dismiss and supplemental memoranda, they contend that the Court should dismiss LODGW from the case because LODGW lacks sufficient contacts with Pennsylvania to support personal jurisdiction. (Doc. Nos. 20, 41.) In opposition to this contention, Plaintiffs submit that LODGW's LinkedIn page and website, the depositions of Mr. Johnson and Mr. Waldman, the Notices sent to Plaintiffs, and the state

foreclosure action establish a prima facie case of jurisdiction over LODGW. (Doc. No. 40.) Having reviewed the parties' supplemental memoranda, the Court is persuaded that it can exercise personal jurisdiction over LODGW.

Personal jurisdiction refers to the court's power over parties to a lawsuit. "A federal district court may assert personal jurisdiction over a nonresident of a state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987). This Court sits in Pennsylvania, which permits jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b); see also D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). Therefore, to determine whether the Court can exercise personal jurisdiction over LODGW, the Court must evaluate whether, under the Due Process Clause, LODGW has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." D'Jamoos, 566 F.3d at 102 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction. General jurisdiction, which is not at issue here, refers to a situation where the nonresident's contacts with the forum state are so "continuous and systematic" that the nonresident is essentially "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). Where general jurisdiction exists, a court may hear any claim against the nonresident, regardless of whether the claim arises from the contacts with the forum state. Id. (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924-25 (2011)). Specific jurisdiction, on the other hand, exists if the defendant has "'purposefully directed' his activities at residents of the forum and the litigation

results from alleged injuries that 'arise out of or relate to' those activities." Metcalfe, 566 F.3d at 334 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

To determine whether there is specific jurisdiction, the Court must engage in a three-part inquiry. First, the Court must evaluate whether the defendant "purposefully established 'minimum contacts' in the forum State." Burger King Corp., 471 U.S. at 472. Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Third, if the first two requirements have been met, the court may consider whether exercising personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

Here, through jurisdictional discovery, Plaintiffs have identified evidence that Defendant LODGW's contacts with Pennsylvania are sufficient to satisfy the minimum contacts prong of the specific jurisdiction inquiry. For one, LODGW's public LinkedIn page advertises that LODGW provides legal services in Pennsylvania. The page also states that the firm has an office at 4900 Carlisle Pike, Mechanicsburg, Pennsylvania. (Doc. No. 40-7.) Further, LODGW's LinkedIn page directs viewers and potential clients to its website, www.dwaldmanlaw.com. Like the LinkedIn page, LODGW's website states that the firm provides "foreclosure and bankruptcy services to lenders in seven states: Florida, New Jersey, New York, Texas, Nevada, Tennessee, and Pennsylvania." (Doc. No. 40-8.) Furthermore, the website contains job postings, several of which seek attorneys or law clerks for the "Pennsylvania firm." These postings specifically target individuals who reside in Pennsylvania or who are licensed to practice law in Pennsylvania. (Id. at 2-4; Doc. No. 40-10.)

Notwithstanding the numerous online representations that LODGW has a law office in Pennsylvania, which is located at the same address as DWaldmanLaw, representatives of LODGW emphasize that the two firms are separate entities that are merely "affiliated" with one another. However, despite the claim of mere "affiliation," LODGW provides administrative services for DWaldmanLaw. (Doc. No. 40-12 at 12-18.) Further, it routinely answers calls from Pennsylvanians hoping to speak with DWaldmanLaw. Indeed, the telephone number listed on the Notices received by Plaintiffs is the telephone number for LODGW. (See Doc. No. 40-1.) Additionally, LODGW regularly sends foreclosure notices and information to Pennsylvanians on behalf of DWaldmanLaw. In fact, the Intent Notice sent to Plaintiffs by DWaldmanLaw came from LODGW's Florida mailroom. (Doc. No. 40-3 at 8-14.) And on occasion, individuals employed solely by LODGW perform work on Pennsylvania cases for DWaldmanLaw. Mr. Waldman emphasizes that such work is merely administrative; but he admits that his employees have contacted courts in Pennsylvania to schedule hearings in foreclosure actions filed by DWaldmanLaw. (Doc. No. 40-12 at 14-15.) On at least one occasion, an LODGW employee provided legal research in support of a motion filed by DWaldmanLaw in Pennsylvania state court. (Id. at 27-79.)

These contacts are not accidental. When explaining why he includes contact information for DWaldmanLaw in his email signature, Mr. Johnson, who is employed by LODGW and not DWaldmanLaw, stated the following: "It's an affiliation . . . we want all of our clients to be aware that we do have affiliations in other states and that if they need legal resources or legal assistance for those states, that they have contact information for those firms." (Doc. No. 40-3 at 18.) Put another way, LODGW holds itself out to be a law firm that can cater to the needs of lenders collecting debts in Pennsylvania. These efforts are not "random, fortuitous, or attenuated"; rather,

they constitute calculated, intentional attempts by LODGW to avail itself of the privileges, benefits, and profits of conducting business within Pennsylvania. Consequently, the Court is convinced that the first part of the specific jurisdiction inquiry is satisfied.

The second part of the specific jurisdiction inquiry focuses on whether the litigation arises from or relates to the contacts discussed in the first part of the inquiry. That is, a court must evaluate whether the case at hand arises from the defendant's contacts with the forum state. Int'l Shoe, 326 U.S. at 319. Here, Plaintiffs claim that Defendants' attempts to collect the mortgage debt violated state and federal law. (See Doc. No. 13.) The attempts cited by Plaintiffs are the exact services advertised by LODGW on its LinkedIn page and website. (Doc. No. 40-1; Doc. No. 40-8.) Moreover, the items used by Defendants to initiate the foreclosure proceedings—the Intent Notice and the Act 91 Notice—were sent from LODGW's mailroom and contained LODGW contact information. (Doc. No. 40-1.) Both documents displayed LODGW's telephone and fax numbers. (Id.) When Defendants finally filed the mortgage foreclosure suit in state court, the address for the attorney of record was the address of LODGW's office in Seminole, Florida. (Doc. No. 40-5.) Based on this evidence, the Court is convinced that Plaintiffs' claims arise out of LODGW's contacts with Pennsylvania as set forth above.

Finally, the Court must address whether the exercise of personal jurisdiction would comport with "fair play and substantial justice." Burger King Corp., 471 U.S. at 476-77. To defeat jurisdiction based on this fairness inquiry, a defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. Here, there is no compelling evidence of record to suggest that it would be unfair or unjust for LODGW to litigate this dispute in Pennsylvania. To the contrary, LODGW's attempts to solicit business in

Pennsylvania should have alerted them to such potential litigation. As a result, LODGW cannot avoid the Court's jurisdiction in this case.

In sum, Plaintiffs have identified evidence through jurisdictional discovery to establish that: (1) LODGW has constitutionally sufficient minimum contacts with Pennsylvania, the forum state; (2) Plaintiffs' claims arise from these contacts; and (3) the Court's exercise of personal jurisdiction over LODGW comports with traditional notions of fair play and substantial justice. For these reasons, the Court has personal jurisdiction over Defendant LODGW.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss (Doc. No. 20), insofar as it asks the Court to dismiss LODGW for lack of personal jurisdiction. The Court will not address Defendants' non-jurisdictional arguments until the parties have had the opportunity to brief the issues. An appropriate Order follows.