IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADOLPH MUIR, et al.,

                 Plaintiffs

    v.

AM SOLUTIONS, LLC, et al.,

                 Defendants.

CIVIL ACTION
NO. 18-729

**OPINION**

**Slomsky, J.**                                           **August 1, 2019**

## I.    INTRODUCTION

This case arises from alleged violations by Defendants of both the Fair Debt Collection

Practices Act ("FDCPA") and Pennsylvania's Loan and Interest Protection Act 6 of 1974 ("Act

6") in connection with a prior mortgage foreclosure action filed in state court by Defendant AM

Solutions ("AM Solutions") against Plaintiffs Adolph and Doris Muir ("Plaintiffs"), an elderly

married couple living in North Philadelphia. In the foreclosure action, AM Solutions alleged that

Plaintiffs had defaulted on a home mortgage executed in 1983 for $6,500. The home is located

at 2141 North Woodstock Street, Philadelphia, Pennsylvania. Including interest and fees, AM

Solutions contended in the foreclosure action that the amount owed rose dramatically over the

years, and that Plaintiffs now owe $83,635.77 on the mortgage. For their part, Plaintiffs deny

signing the mortgage and submit that they have never met the mortgagee, have no memory of

executing the mortgage, and have never made or received any form of payment under the terms

of the alleged mortgage. (Doc. No. 13.)

On June 18, 2018, Plaintiffs filed an Amended Complaint against AM Solutions and its

attorneys. In this Complaint, Plaintiffs allege that AM Solutions, and its attorneys Defendant

DwaldmanLaw, P.C. ("DWaldmanLaw") and Defendant Law Offices of Damian G. Waldman

1

("LODGW") are debt collectors that sent communications in violation of the FCDPA and Act 6 while attempting to collect the alleged debt. In Count I and II, Plaintiffs allege that Defendants violated the FDCPA. In Count III, Plaintiffs seek to remove the cloud on their property by quieting title on their home. In Count IV, Plaintiffs allege that a Notice of Intention to Foreclose sent by Defendant AM Solutions violated Section 403 of Act 6.

On August 1, 2018, Defendants filed the present Motion to Dismiss the Amended Complaint. Defendants argued that (1) the Court should dismiss all claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (2) the Court should dismiss all claims against LODGW for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] (Doc. No. 20.) On May 3, 2019,[2] Plaintiffs filed a Response in Opposition to the Motion to Dismiss for failure to state a claim. (Doc. No. 46.) On May 22, 2019, Defendants submitted a Reply in further support of the Motion to Dismiss. (Doc. No. 48.)

The Motion to Dismiss for failure to state a claim is now ripe for disposition. For the reasons stated below, the Motion will be denied.

## II. BACKGROUND

### A. Factual Background

Plaintiffs Adolph and Doris Muir have lived in their home at 2141 North Woodstock Street, Philadelphia, Pennsylvania for nearly forty-one years. (Doc. No. 13 at 1.) They

---

[1] The Court disposed of this claim in a separate Opinion. (Doc. No. 42.) After the parties conducted limited jurisdictional discovery and submitted supplemental memoranda, the Court found that Plaintiffs had identified sufficient evidence to allow the Court to exercise personal jurisdiction over Defendant LODGW. (Doc. No. 42.)

[2] After Defendants filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction and for failure to state a claim, Plaintiffs filed an Amended Response and a Cross Motion to stay the case pending jurisdictional discovery. (Doc. No. 42 at 6.) The Court heard arguments from the parties on November 19, 2019, granted the Motion to Stay and allowed the parties to conduct limited jurisdictional discovery. (Id.)

purchased the home on July 5, 1978 for $4,500 and have lived there since that date. (Id. at 5.) To the best of their recollection, they did not execute any mortgage to finance the purchase of the property. (Id. at 4.)

On February 23, 2017, Plaintiffs received in the mail three separate documents sent by Defendant DWaldmanLaw and LDOGW on behalf of Defendant AM Solutions. (Doc. No. 40.) The first document was a Validation Notice.[3] The Validation Notice stated:

> This firm may be considered a debt collector attempting to collect a debt. This notice is being sent to you in an attempt to collect the indebtedness referred to herein. Any information obtained from you will be used for that purpose. Pursuant to the Fair Debt Collection Act, 15 U.S.C. §§ 1692 et seq. (1977), you may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty (30) days of receipt of this letter, the creditor will obtain and provide you with written verification thereof; otherwise the debt will be assumed to be valid. Likewise, if requested within thirty (30) days of receipt of this pleading, creditor will send you the name and address of the original creditor if different from above.

(Doc. No. 13 at 24.) The second document was a Notice of Intention to Foreclose[4] that stated:

> Dear Adolph and Doris Muir:
>
> Dwaldmanlaw, P.C. represents AM Solutions, LLC ("Lender"), the holder of a Mortgage on your property located at: 2141 N. Woodstock St., Philadelphia, PA which Mortgage is in **SERIOUS DEFAULT** because your Loan has reached its maturity date of February 14, 1986. Your lender's records indicate you have not made the minimum monthly payments since September 14, 1998. Your account is past due as follows:
>
> Unpaid installments:   $61,506.61
> Unpaid fees:                $3,967.14

---

[3]   Under Section 1692g of the FDCPA, a debt collector must send a notice to the debtor within five days of the initial communication with the consumer. 15 U.S.C 1692g. The notice must inform the debtor of the amount of debt, to whom the debt is owed, and that if the debt is not disputed, the debt collector will assume the debt is valid. Id.

[4]   Section 403 of the FDCPA requires residential mortgage lenders to send a Notice of Intention to Foreclose to the debtor prior to commencing any legal action including mortgage foreclosure. 41 P.S. § 403. The notice must be sent 30 days prior to any foreclosure proceedings and must state the amount required to cure the default. Id.

_____

TOTAL DUE:        $65,473.65
***

> If you do not cure this default within **THIRTY (30) DAYS**, you will become liable for reasonable attorney's fees not to exceed $175.00 plus costs. Our clients intends to exercise its right to accelerate the mortgage payments at that time. This means whatever is owing on the original amount borrowed will be considered due immediately and you may lose the chance to pay off the original Mortgage in monthly installments. If full payments of the amount of default is not made within **THIRTY (30) DAYS**, Lender also intends [to] start a lawsuit to foreclose on your mortgaged property.

(Id. at 25.) The third document was an Act 91 Notice[5] that claimed Plaintiffs had defaulted on monthly payments for nearly nineteen years and owed $65,473.65. (Id. at 28.) The part of the notice discussing the nature of the default stated:

> YOUR LOAN HAS REACHED ITS MATURITY DATE, AND YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due:
> Monthly Payments from September 14, 1998 though and including February 14, 2017 as follows:
> Monthly Payments of $278.31 due on September 14, 1998 through and including February 14, 2017 in the amount of $278.31.
>
> TOTAL PAYMENT IN DEFAULT:    $61,506.51
> UNPAID FEES:                 $3,967.14
>
> **TOTAL AMOUNT PAST DUE:**    **$65,473.65**

(Id.)

Plaintiffs were "surprised and confused" by the Notices because they had no memory of executing a mortgage on their home, nor did they recall receiving any money secured by the mortgage. (Doc. No. 13 at 6.) As a result, they did not send the requested payments to AM

_____

[5]  An Act 91 Notice requirement was promulgated in a Pennsylvania statute titled: The Homeowners' Emergency Mortgage Assistance Program ("HEMAP"). This statute mandates that any lender who intends to foreclose on a mortgage must send an Act 91 Notice. The notice informs the debtor that the mortgage on their home is in default and advised the debtor that he or she might be eligible to receive financial assistance from the Commonwealth.

Solutions. On April 19, 2017, having received no payments, AM Solutions, through DWaldmanLaw and LODGW, filed the mortgage foreclosure action against Plaintiffs in the Court of Common Pleas of Philadelphia County.[6] See AM Solutions, LLC v. Muir, Civ. No. 02534 (Ct. Com. Pl. Philadelphia, filed Apr. 19, 2017).

In the state court complaint, AM Solutions asserted that on February 14, 1983, Plaintiffs executed a mortgage on their home in favor of Harry Friedman, and that the mortgage was then recorded in the Office of the Recorder of Deeds of Philadelphia County on February 18, 1983. (Doc. No. 40-1 at 5-6.) The mortgage, which was attached to the Amended Complaint, states:

> Whereas, the Mortgagor, in and by a certain Obligation in Writing, obligatory under the hand and seal of the Mortgagor, duly executed, bearing even date herewith, stands firmly bound unto the Mortgage in the sum of THIRTEEN THOUSAND ($13,000) Dollars; lawful money of the United States of America, conditioned for the payment to the Mortgagee of the just sum of SIXTY-FIVE HUNDRED ($6,500) Dollars lawful money as aforesaid, together with interest thereon at the rate of Fifteen (15%) per cent per annum in monthly installments of not less than $225.33 each beginning one month from the date thereof and a like amount on the same day of each and every month thereafter, the said monthly installment to be applied first to interest at the aforesaid rate on the principal sum or so much thereof as shall remained unpaid , and the balance of each monthly installment to be applied on account of the principal, and the balance of principal, together with accrued interest remaining unpaid, shall be paid at the expiration of three (3) years from the date thereof . . . .

(Doc. No. 13 at 35.)

As evidenced above, the terms of the mortgage state that Harry Friedman, who is listed as the mortgagee's trustee,[7] agreed to loan Plaintiffs $6,500, payable with 15% annual interest over

---

[6] On May 18, 2019, the mortgage foreclosure action was dismissed without prejudice for failure to comply with the local pleading requirements. (Doc. No. 40 at 2 n.1); see AM Solutions, LLC v. Muir, Civ. No. 02534 (Ct. Com. Pl. Philadelphia, filed Apr. 19, 2017).

[7] The mortgage does not clarify the duties of Harry Friedman as the trustee. The Amended Complaint treats Harry Friedman as the mortgagee, who later assigned the mortgage to AM Solutions.

three years through monthly payments of no less than $225.33 beginning on March 1, 1983. (Id.)

Plaintiffs deny ever signing this mortgage. (Id. at 9.) They do not remember executing such a mortgage on their home, nor do they recall meeting an individual named Harry Friedman. (Id.) Moreover, Bernard Muir, Plaintiffs' "distant" cousin, who had witnessed the purported mortgage, "had no involvement in financial matters involving Plaintiffs." (Id. at 8.)

AM Solutions became the holder of the alleged mortgage through an assignment, which was recorded on August 15, 2016. (Id.) According to Plaintiffs, AM Solutions is a business that "acquires, manages, and liquidates defaulted residential mortgages" as well as "regularly engages in the collection of consumer debts by filing lawsuits in mortgage foreclosure[s]." (Doc. No. 13 at 3.) Defendants admit that AM Solutions, in its debt collection activities, purchases debt "in default for the purposes of collecting upon that debt." (Doc. No. 20 ¶ 19.) AM Solutions engages in foreclosure litigation in Philadelphia County; it has filed ten mortgage lawsuits in 2017 alone. (Doc. No. 13 at 3.)

As alleged in the Amended Complaint, DWaldmanLaw and LODGW "represent AM Solutions" and sent the Notices to Plaintiffs in "an attempt to collect a debt." (Doc. No. 13 at 25-26). Plaintiffs allege DWaldmanLaw is "a collection and foreclosure law firm" and "regularly engages in the collection of consumers debts by filing lawsuits in foreclosure." (Doc. No. 13 at 4.) Additionally, the Notice of Intention to Foreclose states that "this firm may be considered a debt collector attempting to collect a debt" and listed the firm's second email as "paforeclosures@dwaldmanlaw.com." (Doc. No. 13. at 25-26.) The Amended Complaint further alleges that DWaldmanLaw has filed "no less than 16 mortgage foreclosure lawsuits on behalf of its clients." (Id.) Ten of the sixteen lawsuits were filed on the behalf of AM Solutions.

(Id.)  The Notices were sent from LODGW's mailroom and contained LODGW's contact information. (Doc. No. 40-1.)  Both documents prominently displayed LODGW's telephone and fax numbers.  (Id.)

In the state Foreclosure Complaint, AM Solutions alleged that Plaintiffs owed $83,645.77, and provided the following chart to demonstrate how it arrived at that sum:

| Unpaid Principal Balance | $13,000 |
| Accrued Interest from 2/14/1983 to 4/30/17 (the per diem interest accruing on this debt is $5.34 and that sum should be added each day after 4/30/17) | $66,668.63 |
| Fees at Charge-Off | $3,967.14 |
| TOTAL | $83,635.77 |

### B.     Plaintiffs File an FDCPA Claim in Federal Court

On February 20, 2018, Plaintiffs initiated the present action by filing a three-count Complaint against AM Solutions and DWaldmanLaw.  (Doc. No. 1.)  In the Complaint, Plaintiffs alleged that the Validation Notice, the Notice of Intent to Foreclose, the Act 91 Notice, and the mortgage foreclosure suit violated the FDCPA.  Plaintiffs also sought to quiet title on their home. (Id.)

On June 18, 2018, Plaintiffs filed the Amended Complaint, which added the Law Offices of Damian G. Waldman  ("LODGW") as a Defendant.  LODGW is a Florida corporation with offices at 10333 Seminole Boulevard, Units 1 and 2, Seminole Florida – the address listed on the civil cover sheet of the state foreclosure complaint.  (Doc. No. 13.)  In the Amended Complaint, Plaintiffs allege DWaldmanLaw and LODGW work in concert to collect consumer debts by filing foreclosure actions in Pennsylvania.  (Id.)  Also added to the Amended Complaint was a fourth Count, alleging that AM Solutions violated the Pennsylvania Loan Interest and Protection

Law ("Act 6"). (Id.) Defendants responded to the Amended Complaint with the instant Motion to Dismiss. (Doc. No. 20).

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

## IV.    ANALYSIS

Plaintiffs Adolph Muir and Doris Muir bring four claims against Defendants AM Solutions, DWaldmanLaw, and Law Offices of Damian G. Waldman ("LODGW"). (Doc. No. 13 at 1.) Plaintiff Adolph Muir alleges in Count 1 a violation of Section 1692e of the Fair Debt Collection Practice Act ("FDCPA"), which prohibits the use of deceptive or misleading communications when collecting a debt. (<u>Id.</u> at 9.) Plaintiff Doris Muir in Count II alleges the same violation against Defendants. (<u>Id.</u> at 10.) In Count III, Plaintiffs seek a judgment to quiet title to remove Defendants' claim on their home. (<u>Id.</u> at 11.) Finally, Count IV alleges violations of Act 6. Under Act 6, Plaintiffs allege that Defendants did not accurately state the nature of the default and the exact sum of money Plaintiffs allegedly owed. (<u>Id.</u> at 12.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss all counts, contending that Plaintiffs have failed to state a legally cognizable claim in each one. (Doc. No. 20.)

### A. The Motion to Dismiss Will Be Denied on Counts I and II Alleging a Violation of the FCDPA

To state a legally sufficient claim under the FDCPA, Plaintiffs must plausibly allege that (1) they are consumers, (2) Defendants are debt collectors, (3) Defendants' challenged practice constitutes an attempt to collect a debt, and (4) Defendants violated the FDCPA in their attempt to collect debt. See Tatis v. Allied Interstate, LLC, 882 F.3d 422, 427 (3d Cir. 2018).

In the Motion to Dismiss, Defendants only dispute the second and fourth elements. Attacking the sufficiency of the second element, Defendant AM Solutions claims that it cannot be classified as a debt collector because it purchased the debt while it was in default, and therefore is collecting the debt for its own account. (Doc. No. 20 ¶ 32.) Similarly, Defendants LODGW and DWaldmanLaw assert that their status as lawyers for AM Solutions creates a fiduciary duty that excludes them from being debt collectors under the statutory definition. (Id. ¶ 24.) In reference to the fourth element, Defendants contend that Plaintiffs have not adequately alleged that the mortgage is fraudulent, and that the discrepancy in payment amounts is because AM Solutions chose to collect different portions of the debt at different times.[8] As a result, they argue that their actions do not violate the FCDPA. For the following reasons, the Court is not persuaded by Defendants' arguments.

#### 1. Defendant AM Solutions is a Debt Collector

Defendant AM Solutions first contends that it does not meet the FDCPA's definition of debt collector, and for this reason Counts I and II fail to state a claim against it. (Id. ¶ 32.) The FDCPA describes two ways in which any entity or person may become a debt collector. First,

---

[8] Defendants submit that the difference between the $65,473.65 demanded in the Notice of Intention to Foreclose and the Act 91 Notice and the $83,645.77 demanded in the state foreclosure action is explained by Defendants' decision to collect the entirety of the debt in the state foreclosure action. (Doc. No. 20 at 35.) Plaintiff argues, however, that both amounts are inconsistent with the mortgage terms. (Doc. No. 13 at 8.)

any entity that "regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . another" is a debt collector. 15 U.S.C. § 1692a. This is known as the "regularly collects" definition. Second, any person engaged "in any business the principal purpose of which is the collection of any debt" is also a debt collector. Id. This is known as the "principal purpose" definition.

AM Solutions claims that because it did not collect the debt for another, it cannot be a debt collector under the "regularly collects" definition.[9] This contention heavily relies on Henson v. Santander Consumer USA, Inc. 137 S.Ct. 1718, 1721-22 (2017). Henson expatiated on the meaning of "debt owed or due. . . another" within the regularly collects definition of debt collector. Id. at 1722. In Henson, Santander, the purported debt collector, attempted to collect a debt that it had purchased from a creditor. Id. at 1721. That is, Santander attempted to collect a debt owed to Santander. Id. As a result, it claimed that it was not a debt collector under the "regularly collects" definition. Id. Conversely, the debtor argued that the debt was not originally owed to Santander, therefore, Santander attempted to collect a debt owed to another and fell within the regularly collects definition. Id. at 1723. The U.S. Supreme Court agreed with Santander, holding that the word "owed" described a debt that was currently due at the time of collection. Id. at 1725. Thus, the Court excluded companies like Santander that purchase defaulted debt from the "regularly collects" definition. Id.

AM Solutions claims that under Henson, it is not a debt collector. (Doc. No. 20 ¶ 19.) But that argument ignores that Henson's holding was limited to the "regularly collects" definition of debt collector. In fact, the Court explicitly refused to consider the "principal purpose" definition in its holding. Id. at 1721 ("But the parties haven't much litigated that

---

[9] Defendant did not proffer any argument why the "principal purpose" definition is inapplicable in its Motion to Dismiss.

alternative definition [referring to the principal purpose definition] and in granting <u>certiorari</u> we didn't agree to address it either"). So while AM Solutions may not qualify as a debt collector under the "regularly collects" definition, it may still be a "debt collector" under the "principal purpose" definition. <u>See</u> <u>Barbato v. Greystone Alliance, LLC</u>, 916 F.3d 260, 267 (3d Cir. 2019). Thus, the Court must now consider whether Plaintiffs have sufficiently pled that AM Solutions is debt collector under the "principal purpose" definition.

To determine whether AM Solutions is a debt collector under the "principal purpose" definition, the Court first looks at the plain meaning of the statutory text. <u>Id.</u> The text states that "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" is a debt collector. 15 U.S.C. 1692a(6). The principal purpose definition is not encumbered with the "debt due or owed . . . another" language, rather it applies to "any debt." <u>Id.</u> As Defendant used the mails to send its debt collection notices to Plaintiff and "any debt" encompasses a debt collected for a person on their own account, AM Solutions' status as a debt collector hinges on the "principal purpose" element. (Doc. No. 13 at 6); <u>see</u> <u>Barbato</u>, 916 F.3d at 267. Third Circuit precedent notes that a plain language reading of "principal purpose" debt collector means an entity that has the collection of any debts as its most important aim. <u>Id.</u> Expounding on the statutory language, the Third Circuit reasoned that "as long as a business's <u>raison</u> <u>d'etre</u> is obtaining a payment on the debts it acquired, it is a debt collector." <u>Id.</u>

Here, Plaintiffs have alleged that AM Solutions "acquires, manages, and liquidates defaulted residential mortgages" as well as "regularly engages in the collection of consumer debts by filing lawsuits in mortgage foreclosure[s]." (Doc. No. 13 at 13.) AM Solutions' dedication to debt collection is further evidenced by its foreclosure litigation in the Philadelphia

County Court of Common Pleas; it has filed ten mortgage lawsuits in 2017 alone. (Id.) Moreover, Defendant admits that it "purchased the debt in default for the purposes of collecting upon that debt." (Doc. No. 20 ¶ 19.) AM Solutions' heavy involvement in debt collection activity when paired with an absence on this record of non-debt collection commercial activity is enough to plausibly show that AM Solutions is a principal purpose debt collector. See Barbato, 931 F.3d at 267; Norman v. Allied Interstate, LLC, 310 F. Supp. 3d 509, 515 (E.D. Pa. 2018) (holding that evidence of debt collection activity without reference to any other form of commercial activity was sufficient to satisfy the principal purpose definition of debt collector).

### 2. Defendants DWaldmanLaw and LODGW are Debt Collectors

Next, Defendants DWaldmanLaw and LODGW claim that they are not debt collectors because "attorneys hired by a creditor collecting debts for its own account" fall under the bona fide fiduciary obligation exception of the FDCPA. (Doc. No. 20 ¶ 24.) The FDCPA contains a specific exception for "any person collecting or attempting to collect any debt owed . . . or due another to the extent that such activity (i) is incidental to a bona fide fiduciary duty." 15. U.S.C § 1692a(6). Defendants assert that "attorneys fall under the umbrella of this exception by the plain language of the statute" because the relationship between attorney and client is "inherently fiduciary." (Doc. No. 20 ¶ 25.)

But it is well established that attorneys who regularly collect debts for another can be "debt collectors" under the FDCPA. In Heintz v. Jenkins, the Supreme Court held that attorneys are not exempt from the FDCPA and attorneys who regularly engage in debt collection activity are debt collectors. 514 U.S. 291, 299 (1995). The Third Circuit reinforced this decision in Kaymark v. Bank America, N.A. 783 F.3d 168, 176 (3d Cir. 2015) (holding that it is well-established law in this Circuit that the FDCPA covers attorneys engaged in debt collection

litigation).  Still, Defendants insist that their status as attorneys creates a bona fide fiduciary duty[10] which excludes them from the Act's reach.

As noted in the FDCPA, a "bona fide fiduciary duty" exemption only applies if attorney's debt collection activity is incidental to that duty, not merely if that duty exists.  15 U.S.C § 1692a(6)(F).

Here, DWaldmanLaw's debt collection activities are central to its duty to AM Solutions. Plaintiffs allege that DWaldmanLaw is "a collection and foreclosure law firm" and "regularly engages in the collection of consumers debts by filing lawsuits in foreclosure." (Doc. No. 13 at 4.)  DWaldmanLaw also has filed over "no less than 16 mortgage foreclosure lawsuits on behalf of its clients."  (Id.)  Ten of the sixteen listed foreclosure lawsuits are on the behalf of AM Solutions.  (Id.)  The Notice of Intention to Foreclose written by DWaldmanLaw specifically states that they "represent AM Solutions" and it is "an attempt to collect a debt." (Doc. No. 13 at 25-26.)  Moreover, the Notice of Intention to Foreclose further states that "this firm may be considered a debt collector attempting to collect a debt." (Id.)  It also prominently displays the Firm's second email address, "paforeclosures@dwaldmanlaw.com," demonstrating the firm's focus and expertise in debt collection on defaulted mortgages.  (Id.)

LODGW is similarly situated.  Construing the evidence in the light most favorable to Plaintiffs, the Court must accept Plaintiffs allegation that DWaldmanLaw and LODGW work in concert to collect consumer debts in Pennsylvania.  (Doc. No. 13.)  The facts pled by Plaintiffs to support this allegation are that Notices were sent from LODGW's mailroom and contained

---

[10] A bona fide fiduciary duty creates a legal relationship, where the fiduciary must prudently care for money or other assets for another person.  An attorney owes a fiduciary duty to his client, which "demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable."  Reis v. Barley, Snider, Senft, & Cohen, LLC, 667 F. Supp. 2d 471, 478-88 (E.D. Pa. 2009).

LODGW's contact information, including its fax and telephone numbers. (Doc. No. 40-1.) Therefore, because of LODGW's involvement in sending the Notices and working with DWaldmanLaw, LODGW's debt collection activity is no more "incidental" to its duty to the client than DWaldmanLaw's is incidental. Thus, Plaintiffs have sufficiently pled that DWaldmanLaw and LODGW are debt collectors and were attempting to collect a debt.

### 3. Plaintiffs Have Plausibly Alleged that Defendants Sent Defective and Misleading Notices that Omitted Key Information and Made Demands For Inaccurate Payment Amounts in Violation of the FDCPA

In Counts I and II, Plaintiffs allege that Defendants violated the FDCPA by attempting to collect the mortgage debt by sending a Validation Notice and a Notice of Intention to Foreclose that were false and misleading in violation of Section 1692g. (Doc. No. 13 ¶ 21.) Plaintiffs contend both Notices were misleading for two reasons. First, Plaintiffs allege that Defendants' Validation Notice was insufficient because the Notice omitted "by the debt collector" from the phrase "assumed valid by the debt collector."[11] (Doc. No. 46 at 6-7.) Second, Plaintiffs assert that the mortgage is fraudulent and that any demand for payment on a fraudulent instrument is deceptive and misleading. (Id. at 9-10.) In the alternative, Plaintiffs submit that, even if the mortgage is valid, the notice sent by Defendants still misstated the amount owed. (Id. at 11.)

In the Motion to Dismiss, Defendants first argue that the Validation Notice is compliant with Section 1692g because the reader would read in "by the debt collector" from the context of the notice and from the previous references to the debt collector throughout the notice. (Doc. No. 20 ¶ 32.) Next, they argue that Plaintiffs have not plausibly alleged that the mortgage is

_____

[11] In Section 1692g(3), the FDCPA requires that the Validation Notice contain "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C § 1692g(3).

fraudulent. (Id. ¶ 36.) Defendants also argue that the difference in the amount demanded between the Notice of Intention to Foreclose, the Act 91 Notice, and the Foreclosure Complaint can be explained by AM Solutions' decision to demand the entire payment in the Foreclosure Complaint while the Notice of Intention to Foreclose and the Act 91 Notice only demand unpaid installments.[12] (Id. ¶ 35.) Defendants also assert that they evade liability under the FDCPA because they cannot be held liable for fraud committed by the assignor of the mortgage. (Id. ¶ 37.) Finally, Defendants argue that emotional damages are not recoverable under the FDCPA. (Id. ¶ 40.)

### a. The Validation Notice is Misleading Because It Omits Statutorily Required Language Under Section 1692g

The Validation Notice sent by Defendants does not include the phrase "by the debt collector." Therefore, the Validation Notice violates Section 1692g of the FDCPA. Section 1692g requires that whenever debt collectors send a consumer notice that any debt is owed, they must attach a written Validation Notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C § 1692g(a)(3) (emphasis added). The Validation Notice is governed by Section 1692e[13] and cannot use "any false representation or deceptive means to collect any debt." 15 U.S.C § 1692e.

---

[12] Defendants seem to misinterpret Plaintiffs' allegation here. The Amended Complaint alleges that the amounts demanded in the Notice of Intention to Foreclose, the Act 91 Notice, and the Foreclosure Complaint are misleading because they contradict the mortgage terms, not that the amount demanded in the Foreclosure Complaint is inconsistent with the amounts demanded in the Notice of Intention to Foreclose and the Act 91 Notice.

[13] In relevant part, Section 1692e reads as follows: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C § 1692e.

The Validation Notice that Plaintiffs submit is misleading, reads as follows:

> This firm may be considered a debt collector attempting to collect a debt. This notice is being sent to you in an attempt to collect the indebtedness referred to herein. Any information obtained from you will be used for that purpose. Pursuant to the Fair Debt collection Act, 15 U.S.C. §§ 1692 <u>et seq.</u> (1977), you may dispute the validity of the debt or any portion thereof. If you do so in writing within thirty (30) days of receipt of this letter, the creditor will obtain and provide you with written verification thereof; otherwise, the debt will be assumed to be valid.

(Doc. No. 12 at 24.)

Congress originally adopted "the debt validation provision of Section 1692g" to guarantee that consumers would receive "adequate notice" of their rights. <u>Caprio v. Healthcare Revenue Recovery Group, LLC</u>, 709 F.3d 142, 148 (3d Cir. 2013) (citing <u>Miller v. Payco-General Am. Credits, Inc.</u>, 943 F.2d 482, 484 (4th Cir. 1991)). In order to ensure that consumers receive notice of their rights, debt collectors need to do more than merely include the statutory debt validation notice in the debt collection letter – the required notice must be conveyed effectively to the debtor and cannot be overshadowed or contradicted by the debt collector. <u>Id.</u> Courts will judge the notice as overshadowing or contradictory if it would make the least sophisticated debtor uncertain as to her rights or "can be reasonably read to have two or more different meanings, one of which is inaccurate." <u>Id.</u> at 149. The least sophisticated debtor standard ensures that "the FDCPA protects all consumers, the gullible as well as the shrewd." <u>Id.</u> The standard is markedly less demanding than a reasonable consumer debtor, but "does not provide solace to the willfully blind or non-observant." <u>Id.</u> The least sophisticated debtor is still assumed to possess a basic level of understanding, a willingness to read with care, and a desire to read the notice in its entirety. <u>Caprio</u>, 709 F.3d at 149.

Applying this standard to the omission of the words "by the debt collector" in the Validation Notice, courts have held that the failure to identify the entity that will be "assuming

the debt as valid" is likely to suggest to the least sophisticated debt collector that her debt will be assumed valid by an entity of authority, such as a court or credit bureau. See Nelson v. Select Fin. Servs., Inc., 430 F. Supp. 2d 455, 459 (E.D. Pa. 2006); Smith v. Hecker, No. 04-5820, 2005 WL 894812, at *6 (E.D. Pa. Apr. 18, 2005). While the debt collector is not required to quote the statute verbatim, they must provide a non-deceptive statement that informs the debtor which entity will assume the debt is valid. See Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000); Smith, 2005 WL 894812, at *4. There must be a connection between the debt collector and the assumption of the debt readily apparent from reading the notice. See Wilson, 225 F.3d at 354; Smith, 2005 WL 894812, at *4.

Here, Defendants' Notice omits the name of the party that will assume the debt to be valid, suggesting that the debt could be assumed valid by anyone. (Id.) Moreover, a plain reading of Defendants' Notice fails to convey to the least sophisticated debtor that only the debt collector will assume the debt valid. The least sophisticated debtor may reasonably believe that a court may construe failure to dispute the debt as an admission of liability, an assumption specifically barred by the FDCPA.[14] 15 U.S.C. §1692g(c). Thus, because Defendants' Notice fails to set forth the required language that the debt will be assumed to be valid "by the debt collector," it violates the validation notice provision of the FDCPA.

_____

[14] 15 U.S.C § 1692(g)(c) provides as follows:

  (c) Admission of liability

    The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

15 U.S.C § 1692(g)(c)

### b. Plaintiffs Have Plausibly Pled that the Mortgage is Fraudulent and Therefore Have Alleged a Claim Under the FDCPA

Defendants contend that because Plaintiffs have not plausibly pled sufficient facts to establish that the mortgage is fraudulent, they have not plausibly alleged that the Notice of Intention to Foreclose, Act 91 Notice, and the Foreclosure Complaint violate Section 1692e of the FDCPA.[15]  (Doc. No. 20 ¶ 37.)  They assert that Plaintiffs have not explicitly denied signing the purportedly fraudulent mortgage, simply claiming that they "do not recollect signing the mortgage" and "have never received or made payments" in accordance with the mortgage.  (Id.) Defendants contend that "a lack of recollection of debt" is not sufficient to plead fraud.  In the alternative, Defendants contend that even if the mortgage is fraudulent, they cannot be held liable under the FDCPA because the fraud was committed by the original assignor.  (Id.)

Contrary to Defendants' assertions, Plaintiffs have proffered several facts to demonstrate that the mortgage was fraudulent, at least at this stage of the proceedings.  They claim that they have "no recollection of the mortgage" and "deny signing the Sham mortgage."  (Doc. No. 13 at 9.)  Additionally, Plaintiffs do not remember "receiving or making any payments with respect to $6,500 loan" and "do not believe they executed such a mortgage, nor received a $6,500 loan." (Id.)  Plaintiffs also deny knowing the mortgage trustee, Harry Friedman, and are "certain" that their "distant cousin" Bernard Muir, who allegedly witnessed the mortgage, had "no involvement in any financial matters involving Plaintiffs."  (Id.)  As such, they categorically deny that Bernard Muir witnessed the signing of any mortgage.  (Id.)  Defendants' or its predecessors' failure to demand payments from, and the lack of notice of non-payment to Plaintiffs for thirty four years further evidence the mortgage's fraudulent nature.  (Id.)  Therefore, as revealed by the

---

[15] Plaintiffs argue that attempting to collect a debt created from a fraudulent mortgage is a false representation of the character and legal status of a debt. They claim that violates § 1692e which prohibits the "false representations of . . . the character, amount, or legal status of any debt." 15 U.S.C § 1692e.

above facts, Plaintiffs have sufficiently pled that the mortgage Defendants attempted to collect is fraudulent.

Although Plaintiffs have sufficiently pled that the mortgage is fraudulent, in order for their claim to proceed, attempting to collect on an allegedly fraudulent mortgage under the FCDPA must include "false representations of . . . the character, amount, or legal status of any debt" under the FDCPA. 15 U.S.C § 1692e. The Third Circuit in Glover v. F.D.I.C. has noted this language creates a "straightforward, objective standard." 698 F.3d 139, 149 (3d Cir. 2012).

In Glover, a law firm attempted to collect a debt when the plaintiff had already made arrangements and payment with the assignee to remove the debt from default. Id. at 140. The court held that the law firm's communications demanding payment were a false representation of the amount owed in violation of the FDCPA. Id. at 149. The law firm then asserted that they were not liable under the bona fide error defense, as they were unaware that the debt had been removed from default. Id. The court rejected that argument, stating "the FDCPA is generally characterized as a strict liability statute because it imposes liability without proof of an intentional violation." Id. (internal quotations omitted). The court further remarked that the bona fide error defense was only available "where reasonable error-avoidance procedures have been employed." Id.

 Here, the Notice of Intention to Foreclose, the Act 91 Notice, and the Foreclosure Complaint assert that Defendants are owed an unpaid debt by Plaintiffs. Rather than claiming that Defendants falsely characterized their payment of the debt, like in Glover, Plaintiffs here are challenging Defendants' claim to and the existence of the debt. See 698 F.3d at 139. When Defendants sent Notices and initiated the Foreclosure Complaint, asserting that the debt was valid, Defendants made a "false representation" about the "character, amount or legal status of

any debt" in connection with the collection of any debt. See 15 U.S.C § 1692e. Because Defendants represented that a debt arising from a fraudulent mortgage was legitimate, they made a false representation about the character and legal status of the debt. Although Defendants contend the mortgage is valid, Plaintiffs pled sufficient facts to plausibly demonstrate that the mortgage was fraudulent. For example, they have denied signing the mortgage, denied knowing the trustee of the mortgage, and denied that the mortgage's witness, Bernard Muir, had any involvement with Plaintiffs' financial matters. (Doc. No. 13 at 9.) To that end, Plaintiffs have pled sufficient facts to establish a plausible violation of Section 1692e. Id.; see Glover, 698 F.3d at 149.

Defendants counter this claim by arguing that "an assignee of a mortgage . . . is not liable for the fraud or statutory violations of the assignor." (Doc. No. 20 ¶ 37.) Defendants maintain that because they themselves did not perpetrate the fraud, they are immune from any liability stemming from the fraud. Id. This contention, however, misstates the issue. Plaintiffs are not attempting to hold Defendants liable for fabricating a fraudulent mortgage; Plaintiffs are attempting to hold Defendants liable for attempting to collect a debt based on a fraudulent instrument without employing proper error avoidance procedures. The creation of the fraudulent mortgage occurred prior to Defendants' alleged actions, but Defendants' attempt to collect the debt by sending Notices actually creates the liability under the FDCPA.

Case law bolsters Plaintiffs' liability theory. As noted in Glover, "[t]he FDCPA is generally characterized as a strict liability statute as it imposes liability without proof of an intentional violation." 698 F.3d at 149 (quoting Allen ex rel. Martin v. LaSalle Bank, N.A., 6299 F.3d 364, 368 (3d Cir. 2011)). The Act's prohibition of false representation is not dependent on "a defendant's lack of knowledge or intent." Id. Rather, the Act only shields debt collectors

from liability when they employ "reasonable error-avoidance procedures" as one of purpose of the Act is to promote fair and honest debt collection. 15. U.S.C. § 1692k(c); see Glover, 698 F.3d at 150. Here, there is no evidence that Defendant implemented any "reasonable-error avoidance procedures," nor do Defendants even claim that they did. Thus, Defendants are unable to escape liability on the basis that they did not know the mortgage was fraudulent

### c. Defendants' Breach Acceleration Argument Does Not Adequately Address Plaintiffs' Contention that the Amounts Demanded are Inconsistent with the Mortgage Terms

Plaintiffs also contend that even if the mortgage is valid, the amounts demanded are deceptive and misleading because they are inconsistent with the stated terms of the mortgage. (Doc. No. 13 at 10.) Defendants explain the discrepancy between the amount of the mortgage and amount demanded by alleging that AM Solutions elected to accelerate the entire debt owed, as opposed to demanding payments of separate missed installations. (Doc. No. 20 ¶ 35.)

The FDCPA's provision against deceptive and misleading communication includes "false representation[s] of . . . the character, amount, or legal status of any debt." 15. U.S.C. § 1692e. In accordance with this provision, debt collectors who make demands for payments must accurately state the amount due in the Notice letter. See Mclaughlin v. Phelan Hallinan & Schmieg, 756 F.3d 240, 248 (3d Cir. 2014) ("If the amount actually owed as of that date was less than the amount listed then . . . [defendant] has stated a claim that the letter misrepresents the amount of debt in violation of 1692e(2)").

Here, construing the facts in the light most favorable to Plaintiffs, the amounts demanded in the Notice of Intention to Foreclose, the Act 91 Notice, and the Foreclosure Complaint are more than what would have been due under the mortgage. The terms of the recorded mortgage state that Plaintiffs were loaned $6,500, payable at 15% annual interest over three years at $225.33 per month, with payments beginning in March 1983. (Doc. No. 13 at 35.) Any

outstanding amount was due on the maturity date, February 14, 1986.  Id.  The maximum amount secured by the mortgage was $13,000.  Id.  The Notice of Intention to Foreclose and the Act 91 Notice demand payment of $65,473.65, and the Foreclosure Complaint demands $83,635.77. (Id. at 21, 25, 29). Both of these amounts are significantly more than the $13,000 secured by the mortgage. (Id. at 35.)  Defendants accelerating the debt only explains the discrepancy between the Act 91 Notice and Notice of Intention to Foreclose; it does not explain why both of those Notices are inconsistent with the mortgage terms. As such, Plaintiffs have sufficiently alleged facts that show Defendants' demand for payment misrepresented the amount of debt due, thus violating the FDCPA's provision against deceptive and misleading communications.[16] 15 U.S.C 1692e(2)(A); see Mclaughlin, 756 F.3d at 248.

In sum, Defendants' Motion to Dismiss for failure to state a claim (Doc. No. 20) will be denied as to Counts I and II.

### B.    Defendants' Motion to Dismiss Count III Will Be Denied

Defendants seek to dismissal of Count III, which seeks to quiet title, on the ground that Plaintiffs did not sufficiently allege that the mortgage is fraudulent and that the allegation stating that the mortgage is invalid is "a statement of law, not of fact." (Doc. No. 20 ¶ 42.)   Plaintiffs rebuff these arguments by emphasizing their denial of signing the mortgage, mortgage's witness Bernard Muir's lack of involvement in Plaintiff's financial matters, and the thirty-four year gap between the execution of the mortgage and the foreclosure proceedings.  (Doc. No. 46 at 19.)

In the Third Circuit, the pleading requirements for actions to quiet title are established by a state's quiet title statute.  Club Comache, Inc. v. Gov't of Virgin Islands, 278 F. 3d 250, 259 (3d

---

[16] Defendants also argue that the FDCPA does not allow for the recovery of emotional damages. (Doc. No. 20 ¶ 40.)   However, courts have held that damages for emotional distress are recoverable under the FDCPA.  Crossley v. Lieberman, 868 F.2d 566, 572 (3d Circ. 1989); Wenrich v. Robert E. Cole, P.C., No. 00-2588, 2001 WL 4994, at *6 (E.D. Pa. Dec. 22, 2000). Thus, Defendants' argument lacks merit.

Cir. 2002). As such, the Court looks to Pennsylvania Rule of Civil Procedure 1061b(3), which states:

> An action to quiet title . . . may be brought to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land.

Pa. R. Civ. P. 1061b(3).

Under Pennsylvania law, when any document, claim, unreleased lien or encumbrance invalidates, impairs, or casts doubt on the title to real property, a party can bring an action to quiet title. Pa. R. Civ. P. 1061b(3). However, one cannot use an action to quiet title to remove a party from one's property. Moore v. Duran, 687 A.2d 822, 829 (Pa. Super. Ct. 1997). In such a scenario, an eviction or ejectment is the proper course of action. Id. The party seeking to quiet title must also describe the land. Pa. R. Civ. P. 1065(a).

The rule governing quiet title actions was intended to be broad in scope and liberally construed by courts. Montgomery County, PA v. MERSCORP, Inc., 904 F. Supp. 2d 436, 450 (E.D. Pa. 2012). However, Count III still falls under the purview of Pennsylvania Rule of Civil Procedure 1019, and therefore must plausibly allege "material facts on which a cause of action or defense is based." Pa. R. Civ. P. 1019(a).

Here, Plaintiffs sufficiently describe the disputed property in compliance with Pennsylvania Rule of Civil Procedure 1061(a). In the Amended Complaint, Plaintiffs stated that they "are currently in possession of their residence located at 2141 N. Woodstock Street, Philadelphia, PA 19121." (Doc. No. 13 at 11.) Furthermore, the claim under the mortgage asserted by Defendants casts doubt on Plaintiffs' sole ownership of their property, so a quiet title action is appropriate.

Defendants do not assert, however, that the Amended Complaint has failed to describe the property in question, nor do they contest that the motion to quiet title is the proper remedy. (Doc. No. 20 ¶¶ 41-42.)  Rather, they reassert that Plaintiffs have not adequately pled that the mortgage is fraudulent and that the Amended Complaint merely concludes that the mortgage is invalid without alleging sufficient facts.  (Id.)  Defendants' Motion to Dismiss Count I and II were predicated on a similar theory.  Because the Court has already deemed the facts Plaintiffs averred in the Amended Complaint sufficient to establish fraud at this phase of the proceedings on Count I and II, the Court need not repeat its analysis of those same facts.  Thus, Defendants' Motion to Dismiss Count III will be denied.

### C.     Defendant's Motion to Dismiss Will Be Denied On Count IV Alleging Violations Under Act 6

Count  IV claims that the Notice of Intention to Foreclose sent by AM Solutions violated Pennsylvania's Loan and Interest Protection Law,  Act  6 of 1974 ("Act 6").[17]  (Doc. No. 13 at 12.)  The Amended Complaint alleges that Defendant commenced the foreclosure action without first sending a valid Notice of Intention to Foreclose in violation of Section 403 of Act 6.[18]  (Id.) Prior to commencing a foreclosure action, Section 403 mandates that a defendant must send a

---

[17]   Again, Count IV of the Amended Complaint only applies to Defendant AM Solutions.

[18]   In relevant part, Section 403c of Act 6 reads as follows:

> Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section . . . The written notice shall clearly and conspicuously state . . . (3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default.

41 P.S. § 403.

notice describing the right of the debtor to cure the default and the amount required to cure. 41 P.S. § 403. Plaintiffs submit that Defendant's Notice of Intention to Foreclose is invalid because it requested an incorrect amount to cure the alleged default and included Defendant's request for attorney's fees, which was over the statutory maximum.

Defendant claims that Plaintiffs had insufficiently alleged violations of Act 6 for three reasons. First, it claims that Section 403 of Act 6 does not give rise to an independent cause of action for the types of damages Plaintiff is requesting. Second, it asserts that the Notice of Intent to Foreclose letter complied with Act 6 and provided an accurate cure amount. Finally, it contends that because the underlying foreclosure action has been dismissed in state court, the claim in Count IV is moot.

### 1. Section 504 of Act 6 Creates an Independent Cause of Action for Violations of Act 6.

First, Defendant asserts that violations of Section 403 of Act 6 do not give rise to an independent cause of action for damages or attorney's fees. (Doc. No. 20 ¶ 44.) Because Section 403 regulates the proper notice a party receive 30 days prior to seeking foreclosure, it only allows the party suffering foreclosure to delay the foreclosure proceeding until the foreclosing party sends the required notice. 41 P.S. § 403. However, under Section 504 of Act 6, a plaintiff may bring a private action for any violation of Act 6.

Section 504 describes causes of action an individual may bring under Act 6. 41 P.S. § 504. Section 504 states:

> Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such a person may be entitled under law.

Id.

Facially, Section 504 of Act 6 allows an individual to bring an action, provided that (1) they have been "affected by a violation of the act," and (2) they sustained damages "by reason of such conduct or violation." Id. Plaintiffs claim that they have been affected by violations of Act 6 because the defective Notice of Intention to Foreclose caused them to incur unnecessary transportation costs and other expenses, as well as "headaches, nausea, fright, anxiety, depression, and loss of sleep." (Doc. No. 13 at 13.) Because Section 504 of Act 6 creates a "broad, substantive right" to file an action for "damages, attorney's fees, and other relief provided by the law," Defendant's contention that Act 6 does not allow a plaintiff to bring an independent cause of action is without merit. See Bayview Loan Servicing, LLC v. Lindsay, 185 A.3d, 307, 309 (Pa. 2018).

### 2. The Notice of Intention to Foreclose is Not Compliant with Act 6 Because the Amount to Cure Demanded by Defendants Exceeds the Amount Owed by Plaintiffs

Next, Defendant contends that the Notice of Intention to Foreclose is compliant with Section 403 of Act 6 because it was sent 30 days prior to the foreclosure action and "advises the amount of money required to cure the default." (Doc. No. 20 ¶¶ 45-49.) Plaintiffs do not dispute that the Notice of Intention to Foreclose was sent 30 days prior to the foreclosure action, but they do submit that the amount to cure contained in the Notice of Intention to Foreclose demanded more than the amount owed in violation of Section 403(c)(3) of Act 6.

The relevant portions of Section 403(c)(3) of Act 6 reads as follows:

(c)  The written notice shall clearly and conspicuously state:

(1)   The particular obligation or real estate security interest;

(2)   The nature of the default claimed;

(3)   The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance

including what sum of money, if any, must be tendered to
cure the default;

Additionally, the Pennsylvania Supreme Court has held that in order to "clearly and conspicuously" state what sum money must be tendered to cure the default, the Notice of Intention to Foreclose must precisely and accurately state the amount needed to cure the mortgage. In <u>JP Morgan Chase, N.A. v. Taggart</u>, a case where a mortgagee bank relied on prior Notices of Intention to Foreclose that were inaccurate as to the debt presently owed by Plaintiff, the Pennsylvania Supreme Court explained that providing a precise figure is necessary to effectuate the purpose of the statute, stating:

> The amount necessary to cure the default, and the calculations used to arrive at this amount, will differ between the first and second action in mortgage foreclosure . . . Only by requiring a new Act 6 Notice [Notice of Intention to Foreclose], provided in advance of a new complaint in mortgage foreclosure, will the borrower have the "clear and conspicuous" information that the General Assembly has determined is critical to enable residential homeowners to cure default and avoid foreclosure.

<u>JP Morgan Chase, N.A. v. Taggart</u>, 203 A.3d 187, 195 (Pa. 2018). Because the older Notices sent by the mortgagee bank inaccurately stated the amount needed to cure the default 30 days prior to the foreclosure action, the previous Notices of Intention to Foreclose did not "clearly and conspicuously" state the amount needed to cure. <u>Id.</u> Thus, the prior Notices were in violation of Section 403 of Act 6. <u>Id.</u>

Here, Plaintiffs assert that because the mortgage is fraudulent, they owe nothing to Defendant. Accepting that allegation as true, under Section 403(c)(3) of Act 6, the "sum of money" that must be tendered by Plaintiffs to cure the default is zero. Because Defendant's Notice of Intention to Foreclose demanded $65,473.65, when Plaintiffs did not owe any debt to Defendant, the Notice is inaccurate. Thus, because notices that demand an inaccurate amount to cure cannot "clearly and conspicuously state . . . sum of money, if any, must be tendered to cure

the default," it is plausible that the Notice of Intention to Foreclose, which requests an inaccurate amount, violates Section 403 of Act 6, at this stage of the proceedings.

### 3. The Dismissal of the State Court Foreclosure Action Did Not Moot Plaintiffs' Claim Under Act 6.

Defendant argues that Plaintiffs' claims for damages are moot because the underlying foreclosure claim has been dismissed in state court. (Doc. No. 20 ¶ 49.) However, the Third Circuit has noted "the assertion that Act 6 can only be used defensively when the creditor has sought foreclosure is inaccurate." In Re Graboyes, 223 Fed. App'x 112, 114-16 (3d Cir. 2007). As discussed above, Section 504 of Act 6 authorizes the recovery of "damages by reason of such conduct or violation."

Here, the conduct or violation occurred when Defendant sent the Notice of Intention to Foreclose. This violation then caused Plaintiffs to incur damages associated with the baseless foreclosure, such as "unnecessary transportation costs and other expenses as well as headaches, nausea, fright, anxiety, depression, and loss of sleep." (Doc. No. 13 ¶¶ 51-53.) Thus, even though the foreclosure action has been dismissed, Plaintiffs still have not been fully compensated for the damages they suffered as a result of Defendant's conduct.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Doc. No. 20) will be denied. An appropriate Order follows.